## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

TOYOTA MOTOR CREDIT
CORPORATION,

        Plaintiff,

        v.

BOROUGH OF WYOMING, PA,
et al.,

        Defendants.

CIVIL ACTION NO. 3:23-cv-00377

(SAPORITO, J.)

## MEMORANDUM

This is a federal civil rights action concerning the allegedly unconstitutional seizure of a 2017 Toyota RAV4 automobile, in which the plaintiff, Toyota Motor Credit Corporation ("Toyota"), held a security interest or lien. Toyota claims that the municipal defendant, Borough of Wyoming ("Wyoming"), caused the vehicle to be towed, stored, and eventually sold by a private towing company, Bovani's Towing & Service Inc. ("Bovani's Towing"),[1] without a warrant and without providing Toyota with just compensation or notice and an opportunity to be heard, in violation of Toyota's Fourth Amendment right to be free from

---

[1] Bovani's Towing was originally a co-defendant as well, but all claims against it were voluntarily dismissed by stipulation. Doc. 78.

unreasonable seizures, Fifth Amendment right to be free from the taking of property without just compensation, and Fourteenth Amendment right to procedural due process, all made actionable by 42 U.S.C. § 1983.

The parties have filed cross-motions for summary judgment. Doc. 57; Doc. 64. The motions are fully briefed and ripe for decision. Doc. 61; Doc. 62; Doc. 65; Doc. 74; Doc. 75; Doc. 79; *see also* Doc. 60; Doc. 63; Doc. 66; Doc. 67; Doc. 76.

## I. BACKGROUND

Wyoming police routinely take custody of vehicles in the course of their law enforcement duties. Wyoming uses a private towing company to tow, store, and eventually dispose of those vehicles if unclaimed. Wyoming does not directly pay the towing company for this service. Instead, the towing company accepts possession of the seized vehicle and seeks to recover towing and storage fees from the owner as a condition for the vehicle's release. If no one pays the fees and reclaims a given vehicle, the towing company seeks to sell that vehicle at public auction to recoup its expenses.

The vehicle here was owned by non-party Geralt T. Clisham, but Toyota held a security interest in the vehicle, entitling it to take

immediate possession of the vehicle in the event of default on its credit agreement with Clisham. In July 2021, Clisham defaulted on his agreement with Toyota when he ceased making monthly payments.

On August 28, 2021, Clisham was driving the vehicle when he was subjected to a traffic stop by a Wyoming Borough police officer, who had observed Clisham driving erratically. When the police officer ran Clisham's driver's license and discovered that his driving privilege had been suspended, he informed Clisham that he could not drive the vehicle. Clisham was unable to provide a phone number for someone to retrieve him or his vehicle, which was parked on the side of the road, partially blocking one lane of Wyoming Avenue. The officer contacted the county 9-1-1 center, which dispatched Bovani's Towing to remove the vehicle to a place of safety. After the vehicle was towed away, the police officer drove Clisham to his daughter's home, informing her that Bovani's Towing had towed the vehicle, where they could retrieve the vehicle, and that the vehicle was immediately releasable so long as the person retrieving it had a valid driver's license. The police officer issued Clisham citations for careless driving and driving with a suspended license.

On October 2, 2021, Toyota assigned the vehicle to a third-party

repossession company to take possession of the vehicle. On December 14, 2021, Toyota learned that the vehicle was being stored at Bovani's Towing in West Pittston Borough. On December 15, 2021, Toyota demanded that Bovani's Towing release the vehicle to Toyota, but Bovani's Towing refused to do so unless Toyota paid more than $7,500 in towing and storage fees. Toyota did not pay the fees and Bovani's Towing did not release the vehicle.

On February 1, 2022, Bovani's Towing submitted an abandoned vehicle report to the West Pittston police department, which processed the vehicle as abandoned and forwarded its own abandoned vehicle report on to PennDOT that same day. On March 13, 2022, PennDOT issued a notice to Toyota notifying it that the vehicle had been declared abandoned, advising Toyota of certain payment obligations should it choose to retrieve the vehicle from Bovani's Towing, and that failure to reclaim the vehicle within 30 days would be deemed consent to the destruction, sale, or other disposition of the vehicle.

With PennDOT's approval, Bovani's Towing exposed the vehicle to a public auction on May 6, 2022, but Bovani's Towing was unable to obtain a buyer for the vehicle. On May 18, 2022, PennDOT issued a

certificate of salvage of a vehicle to Bovani's Towing. On July 26, 2022, Bovani's Towing sold the vehicle to a non-party buyer for $8,500.

In the meantime, on July 11, 2022, Toyota had initiated a state-court action for replevin with respect to the vehicle. On December 22, 2022, Toyota voluntarily dismissed the replevin action.

On March 2, 2023, Toyota commenced this federal civil action by filing its complaint in this matter. On July 5, 2023, Toyota "charged off," or closed, Clisham's account and issued a demand for full payment for all amounts due to Toyota under the installment sale contract. But Toyota has never initiated legal proceedings against Clisham in an attempt to collect full payment due to Toyota under the installment sale contract.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party."

*Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a prima facie showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477

U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

"The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).

> Cross-motions are no more than a claim by each side
> that it alone is entitled to summary judgment, and the

> making of such inherently contradictory claims does
> not constitute an agreement that if one is rejected the
> other is necessarily justified or that the losing party
> waives judicial consideration and determination
> whether genuine issues of material fact exist.

*Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). Thus, "when presented with cross motions for summary judgment, the Court must consider the motions separately, and view the evidence presented for each motion in the light most favorable to the nonmoving party." *Borrell v. Bloomsburg Univ.*, 63 F. Supp. 3d. 418, 433 (M.D. Pa. 2014) (citation omitted). "[E]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions. *Quarles v. Palakovich*, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008)). Nevertheless, "[i]f upon review of cross motions for summary judgment we find no genuine dispute over material facts, then we will order judgment to be entered in favor of the party deserving judgment in light of the law and undisputed facts." *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998).

## III. MATERIAL FACTS

The material facts of this case are undisputed. The parties dispute

only the legal consequences of those facts.

Non-party Gerald T. Clisham is the prior owner of a used 2017 Toyota RAV4 with vehicle identification number 2T3BFREV2HW596414 (the "Vehicle"). On April 19, 2021, Clisham purchased the Vehicle from a non-party car dealership for a purchase price of $21,827. Clisham financed the purchase of the Vehicle through an installment sale contract with a term of sixty months. Immediately thereafter, the car dealership assigned its interest in the installment sale contract to Toyota.

On May 11, 2021, title and ownership of the Vehicle was transferred to Clisham, with the certificate of title identifying Toyota as a lienholder. On June 10, 2021, Clisham made his first, and last, monthly installment payment under the installment sale contract. He did not make his July 10, 2021, monthly installment payment or any subsequent payments, in breach of the terms of the installment sale contract. On August 20, 2021, Toyota sent Clisham a notice to cure demanding payment and notifying him that failure to pay could result in repossession of the Vehicle.

On August 28, 2021, at 1:05 p.m., the Luzerne County 9-1-1 Center received a call reporting a white RAV4 driving erratically. Former Wyoming Chief of Police Christopher Mercavitch responded to the 9-1-1

dispatch concerning the erratic driver.[2] Chief Mercavitch observed the Vehicle "crossing the lines and weaving in and out of lanes."

At approximately 1:28 p.m., Chief Mercavitch stopped the Vehicle on Wyoming Avenue in the area of Seventh Street in the Borough of Wyoming. The driver, Clisham, parked the Vehicle "partly in the road blocking one lane of Wyoming Avenue."

When Chief Mercavitch approached the Vehicle, he observed that the driver, Clisham, appeared to have a head injury. When Chief Mercavitch asked him if he was okay, Clisham stated that he had just gotten out of the hospital, where he had surgery on his brain. When Chief Mercavitch ran Clisham's driver's license, he learned that Clisham was driving while his operating privilege was suspended. Chief Mercavitch informed Clisham that, because his operating privilege was suspended, he could not drive the Vehicle.

Clisham could not provide Chief Mercavitch with a phone number to have someone retrieve him or his Vehicle. Because the Vehicle was

---

[2] We refer to Chief Mercavitch and the police department itself as "former" because, effective December 31, 2022, the Wyoming Borough municipal police department was disbanded and a regional police force appointed to provide police services to the borough thereafter.

partially obstructing one lane of Wyoming Avenue, Chief Mercavitch

informed Clisham that the Vehicle would be towed.[3] Chief Mercavitch

contacted the Luzerne County 9-1-1 Center, which dispatched Bovani's

Towing in West Pittston to remove the Vehicle.[4]

Chief Mercavitch waited for Bovani's Towing to remove the Vehicle.

Wyoming did not place any kind of hold on the Vehicle, and Chief

Mercavitch instructed Bovani's Towing that the Vehicle could be

immediately released to a licensed driver.

Chief Mercavitch then gave Clisham a ride, at his request, to his

daughter's house. Chief Mercavitch told Clisham and his daughter that

Bovani's Towing towed the vehicle, where they could retrieve the Vehicle,

and that the Vehicle was immediately releasable to them so long as the

person driving had a valid driver's license. Clisham was cited by Chief

---

[3] Toyota has conceded that it was reasonable for Chief Mercavitch to have the Vehicle removed from Wyoming Avenue. Toyota, however, disputes whether circumstances provided Wyoming with a valid exception to the warrant requirement or a justification for turning the Vehicle over to the custody of Bovani's Towing.

[4] Wyoming had no written contract with Bovani's Towing, and it had no ordinances or resolutions appointing Bovani's Towing to provide towing services to Wyoming or its police department. It is the common practice of the Luzerne County 9-1-1 Center to dispatch the closest and first available tow company to provide tow services when requested.

Mercavitch for careless driving and driving on a suspended license.

Although Bovani's Towing subsequently conditioned its release of the Vehicle on payment of towing and storage fees, Wyoming itself did not assess any fees or costs related to the Vehicle. It did not commence any civil or criminal forfeiture proceedings as to the Vehicle. Wyoming had no further contact with Bovani's Towing concerning the Vehicle after the August 28, 2021, tow. Unbeknownst to Wyoming, and despite being informed that the Vehicle was immediately releasable from Bovani's Towing, Clisham did not retrieve the Vehicle from Bovani's Towing.

On August 28, 2021, Toyota was not the owner of the Vehicle, did not have possession of the Vehicle, and did not have control over the Vehicle, but Toyota did maintain a security interest in the Vehicle in the form of a lien.[5] Wyoming made no effort to determine whether there was

_____

[5] Toyota also notes in its response to Wyoming's statement of material facts that, after Clisham's default, so long as the Vehicle was located in public (e.g., not behind Bovani's Towing's locked gate, or inside a residential garage), it had access and a right to repossess the Vehicle. *See generally* 12 Pa. Cons. Stat. Ann. § 6251(b) (providing that, after default, a motor vehicle installment sale contract holder may retake possession of the motor vehicle, but unless it can be retaken without breach of the peace, it must be retaken by legal process); 13 Pa. Cons. Stat. Ann. § 9609(b)(2) (providing that, after default, a secured party may take possession of collateral without judicial process if it proceeds without breach of the peace).

a lienholder for the Vehicle, and it did not alert Toyota that the Vehicle had been towed and stored by Bovani's Towing.

Wyoming does not have any legislation, either in the form of an ordinance or resolution, nor does it maintain any written policy governing the towing of vehicles by members of its former police department. Wyoming has never been confronted with issues involving a lienholder's interest in a towed vehicle before this incident. Under the factual circumstances presented here, however, Wyoming has conceded that it would have been Wyoming's regular custom, practice, and duty to remove a vehicle from the roadway as it poses a danger and safety risk to the public, and to inform the tow service that the vehicle could be released to a licensed driver.

On October 2, 2021, Toyota issued an assignment for repossession to its forwarding agency, Millenium Capital Recovery, to repossess the Vehicle. On December 7, 2021, Toyota sent a notice of default to Clisham.

On December 14, 2021, Toyota was informed by Millenium Capital Recovery that the Vehicle was being stored at Bovani's Towing in West Pittston, Pennsylvania, and that the amount owed for towing and storage fees at that point was $7,535. On December 15, 2021, Toyota contacted

Bovani's Towing and demanded release of the Vehicle, and it was informed by Bovani's Towing that the Vehicle would be released upon payment of the $7,535 in accrued towing and storage fees. Toyota was further informed that a police release from Wyoming was not required for it to retrieve the Vehicle from Bovani's Towing. Toyota made efforts to try to negotiate the towing and storage fees, but when Bovani's Towing refused to negotiate its fees, Toyota referred the matter to its attorneys.[6]

On January 7, 2022, Bovani's Towing sent Toyota an email message, which stated:

> Kindly advise as to whether you are picking up this vehicle. We have had no communication with you since we sent you the VIN number on 12/17. If we do not hear from you, we will assume you are not coming for the vehicle and will file for title with the State.

Toyota's impound and seizures workgroup did not respond to this January 7, 2022, email message from Bovani's Towing.

On February 1, 2022, Bovani's Towing initiated abandonment

---

[6] Toyota's corporate designee testified that, rather than the full 109-day storage fee, Toyota would have been willing to pay Bovani's Towing for 30 days of storage, plus towing and administrative fees, for a total of $2,400. But it is unclear whether Toyota actually made such an offer to Bovani's Towing, or if it had been informed that Bovani's Towing had refused to negotiate its fees at all.

proceedings by submitting a completed Form MV-952PP Abandoned Vehicle on Private Property Report by Property Owner to the former West Pittston police department.[7] The form indicated that the Vehicle had been left on the salvor's (Bovani's Towing's) property for 20 days. The West Pittston police department processed the Vehicle as abandoned and submitted a completed Form MV-952, together with Bovani's Towing's Form MV-052PP, to PennDOT that same day.

On March 13, 2022, PennDOT issued a notice to Toyota notifying it that the Vehicle had been declared abandoned by the West Pittston police department. On March 21, 2022, Toyota received the March 13, 2022, notice from PennDOT.

On April 25, 2022, Toyota sent Bovani's Towing a letter demanding the immediate release of the Vehicle, advising Bovani's Towing that "Toyota is not obligated to pay [Bovani's Towing] at all to regain possession of the Vehicle," and that no further legal action would be taken if Bovani's Towing complied.

PennDOT authorized a public auction of the Vehicle, but at the

---

[7] West Pittston's municipal police department was also disbanded in favor of the same regional police department at the end of 2022.

advertised auction on May 6, 2022, Bovani's Towing was unable to obtain a buyer for the Vehicle. On May 18, 2022, PennDOT issued a certificate of salvage for the Vehicle to Bovani's Towing. On July 26, 2022, the Vehicle was sold by Bovani's Towing to a non-party purchaser for $8,500.[8]

In the meantime, on July 11, 2022, Toyota initiated a civil action against Bovani's Towing in the Court of Common Pleas of Fayette County, styled *Toyota Motor Credit Corp. v. Bovani's Towing Service, Inc.*, No. 2022-01241 (Fayette Cnty. (Pa.) Ct. Com. Pl. filed July 11, 2022), seeking possession of the Vehicle and monetary damages on state-law claims of replevin, conversion, and tortious interference.[9] On December 22, 2022, Toyota voluntarily discontinued the state court litigation without prejudice.

On March 2, 2023, Toyota commenced this federal civil action. In addition to reasserting the same state-law claims for replevin, conversion, and tortious interference against Bovani's Towing, Toyota asserted federal civil rights claims against Wyoming and Bovani's

---

[8] Based on the parties' exhibits, the purchaser subsequently applied for and received a reconstruction title.

[9] It is unclear why the lawsuit was filed in Fayette County, as the defendant towing company is located hundreds of miles away in Luzerne County, and the events giving rise to suit occurred there as well.

Towing.

On July 5, 2023, Toyota "charged off," or closed, Clisham's account and issued a demand to him, pursuant to the terms of the installment sale contract, for full payment of all amounts due to Toyota under the installment sale contract. To date, however, Toyota has not initiated any legal proceedings against Clisham to attempt to collect full payment from him under the terms of the installment sale contract.

## IV.    DISCUSSION

Toyota asserts three separate causes of action against Wyoming arising out of the towing, storage, and eventual sale of the Vehicle by Bovani's Towing. First, although Toyota concedes that it was reasonable for Chief Mercavitch to have the Vehicle removed from Wyoming Avenue, where it was partially obstructing the roadway, Toyota contends that permitting Bovani's Towing to take possession of the Vehicle, towing it, storing it, and eventually selling it, constituted an unreasonable seizure of property without probable cause or a warrant, in violation of Toyota's Fourth Amendment rights. Second, Toyota contends that doing so without providing Toyota with just compensation constituted an unlawful taking of private property for public use, in violation of Toyota's Fifth

Amendment rights. Finally, Toyota contends that doing so without providing Toyota with notice and an opportunity to be heard deprived Toyota of a protected property interest without due process of law, in violation of Toyota's Fourteenth Amendment due process rights.

Wyoming seeks summary judgment on the merits of each of Toyota's constitutional tort claims. In the alternative, it seeks summary judgment on the ground that Toyota has failed to establish municipal liability under § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

## A. Plaintiff's Demand for Declaratory Relief

In addition to its demand for damages, the plaintiff seeks declaratory relief against Wyoming under 28 U.S.C. § 2201. But effective December 31, 2022, Wyoming disbanded its municipal police department and appointed a regional police department established under an intermunicipal agreement to provide police services to Wyoming. *See* Def. Ex. Q, Doc. 66-17. *See generally Trethaway v. Pizano*, No. 3:23-CV-1523, 2024 WL 1499903, at *5–7 (M.D. Pa. Apr. 5, 2024) (finding that the Wyoming Area Regional Police Commission, a municipal entity created to oversee the Wyoming Area Regional Police Department, was a

separate legal entity from the Borough of Wyoming). Accordingly, the plaintiff's request for declaratory relief will be dismissed as moot. *See McMillan v. D.C. Bd. of Elections*, 75 F. Supp. 3d 348, 353 (D.D.C. 2014) (dismissing claim for declaratory relief concerning disbanded slate of electors as moot); *cf. Pfeiffer ex rel. Pfeiffer v. Marion Ctr. Area Sch. Dist.*, 917 F.2d 779, 786 (3d Cir. 1990) (finding claim for injunctive relief moot where local organization to be enjoined had been disbanded), *abrogated on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009).

## B. Fourth Amendment Unreasonable Seizure Claim

"In order to establish a claim under the Fourth Amendment, plaintiff must show that the actions of the defendant: (1) constituted a 'search' or 'seizure;' and (2) were unreasonable in light of the circumstances." *Hyman v. Capital One Auto Fin.*, 306 F. Supp. 3d 756, 770 (W.D. Pa. 2018). "The Fourth Amendment generally requires that police obtain a warrant based on probable cause to justify a seizure . . . ." *United States v. Crandall*, 554 F.3d 79, 83 (3d Cir. 2009). One exception to the warrant requirement is the community caretaking exception, which permits police officers to remove and impound vehicles "that

impede traffic or threaten public safety and convenience." *United States v. Smith*, 522 F.3d 305, 313 (3d Cir. 2008).

Toyota concedes that removal of the Vehicle from Wyoming Avenue, where it was partially obstructing the roadway, was reasonable. But it argues that permitting Bovani's Towing to take possession of the Vehicle, storing it, conditioning its release on payment of a substantial balance of accrued storage fees, and eventually selling it to satisfy a possessory lien, constituted an unreasonable seizure of property, in violation of Toyota's Fourth Amendment rights. But we find the seizure at issue here falls squarely within the community caretaking exception to the Fourth Amendment's warrant requirement.

> [Toyota's] argument that the impounding became unconstitutional when [Wyoming] allegedly gave [Bovani's Towing] a "possessory lien" in the car and attached "conditions" on the car's release is an unpersuasive framing of what really happened here. Under the community caretaker exception, the police officer[] conducted a traffic stop and directed [Bovani's Towing] to remove [a vehicle impeding traffic whose owner was physically unable to provide for the removal of the vehicle] from the road pursuant to [his] duties to protect public safety under [Pennsylvania] law. Such a practice does not violate the Fourth Amendment.

*Honda Lease Tr. v. Butler Twp.*, No. 22-cv-4862, 2024 WL 3219272, at *8 (D.N.J. June 28, 2024); *see also* 75 Pa. Cons. Stat. Ann. § 3352(c)(2) ("Any

police officer may remove or cause to be removed to the place of business

of the operator of a wrecker or to a nearby garage or other place of safety

any vehicle found upon a highway [for which] . . . [t]he person or persons

in charge of the vehicle are physically unable to provide for the custody

or removal of the vehicle."); *United States v. Smith*, No. CRIM.A.05-0257,

2005 WL 2746657, at *3–4 (E.D. Pa. Oct. 24, 2005) (§ 3352(c)(2) and

community caretaking exception permitted impoundment where both

occupants of a vehicle, neither of whom was the owner, were arrested and

unable to remove the vehicle, and its owner was unknown to police), *aff'd*,

522 F.3d 305 (3d Cir. 2008); *United States v. 1988 BMW 750IL*, 716 F.

Supp. 171, 173–74 (E.D. Pa. 1989) (§ 3352(c)(2) and community

caretaking exception permitted impoundment of vehicle following

routine traffic stop where neither occupant of the vehicle was licensed to

drive).

Moreover, under the circumstances presented in this case, towing

and impoundment of the Vehicle does not constitute a "seizure" in the

context of the rights of a nonpossessory lienholder, such as Toyota. "A

'seizure' of property . . . occurs when 'there is some meaningful

interference with an individual's *possessory* interests in that property.'"

*Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992) (emphasis added). The towing and impoundment of the Vehicle may have interfered with the possessory interests of Clisham, who owned the vehicle and was in possession of it until it was towed away from Wyoming Avenue, but it had no impact on Toyota's nonpossessory security interest. Clisham's default may have conferred on Toyota the self-help right of repossession—that is, a right to take possession of the Vehicle under certain circumstances. *See, e.g.*, 12 Pa. Cons. Stat. Ann. § 6251(b) (providing that, after default, a motor vehicle installment sale contract holder may retake possession of the motor vehicle, but unless it can be retaken without breach of the peace, it must be retaken by legal process); 13 Pa. Cons. Stat. Ann. § 9609(b)(2) (providing that, after default, a secured party may take possession of collateral without judicial process if it proceeds without breach of the peace); *see also, e.g.*, *Laurel Coal Co. v. Walter E. Heller & Co.*, 539 F. Supp. 1006, 1007–08 (W.D. Pa. 1982) ("[T]he actual breaking of a lock or fastener securing property, even commercial property, constitutes a 'breach of the peace' within the meaning of the Pennsylvania statute"). But a nonpossessory security interest does not become a *possessory* security interest until the secured party takes possession after a default.

*See* U.C.C. § 9-601 cmt. 4 (2022) (stating that nonpossessory security interests are not indistinguishable from possessory security interests until after default *and the taking of possession*). Toyota simply never took possession of the Vehicle at any point.

Accordingly, summary judgment will be granted in favor of Wyoming and against Toyota with respect to the plaintiff's Fourth Amendment unreasonable seizure claim.

### C. Fifth Amendment Takings Claim

The Fifth Amendment prohibits a governmental entity from taking "private property . . . for public use, without just compensation." U.S. Const. amend V. Toyota claims that the towing, storage, and eventual sale of the Vehicle constitutes such a taking of private property for a public use, without just compensation.

But there is a broad consensus among the courts that "the towing and subsequent storage of vehicles does not constitute a public use." *Brite Fin. Servs., LLC v. Bobby's Towing Serv., LLC*, 461 F. Supp. 3d 549, 558 (E.D. Mich. 2020) (collecting cases); *see also Bennis v. Michigan*, 516 U.S. 442, 452 (1996) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the

exercise of governmental authority other than the power of eminent domain."); *Tate v. Dist. of Columbia*, 627 F.3d 904, 909 (D.C. Cir. 2010) ("Nor did the impoundment and subsequent sale of Tate's booted vehicle constitute a taking for public use for which she was entitled to compensation under the Fifth Amendment's Takings Clause."). "Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause." *Amerisource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008); *see also Hart v. Gordon*, 591 Fed. App'x 125, 129 n.19 (3d Cir. 2014) ("[A] Takings Clause claim is a non-starter when property is retained or damaged pursuant to the police power[.]") (internal quotation marks omitted); *Zitter v. Petruccelli*, 213 F. Supp. 3d 698, 708–09 (D.N.J. 2016) ("[P]roperty seized and retained pursuant to the police power does not raise a Takings Clause claim[.]").

Here, the Vehicle was not taken for public use. Rather, Chief Mercavitch caused Bovani's Towing to remove the Vehicle to its place of business or another place of safety because it was partially blocking a roadway and its unlicensed driver was unable to arrange for someone else to retrieve it. *See* 75 Pa. Cons. Stat. Ann. § 3352(c)(2); *Smith*, 2005 WL 2746657, at *3–4; *1988 BMW 750IL*, 716 F. Supp. at 173–74. This

action by the Wyoming police department was an exercise of its police powers, undertaken in its role as community caretaker, to maintain public safety, and to uphold traffic laws. *See Honda Lease Tr.*, 2024 WL 3219272, at *8; *see also Davis v. Doe*, No. 23-CV-4863, 2024 WL 1660542, at *4 (E.D. Pa. Apr. 17, 2024) (no takings claim based on impoundment and eventual sale of vehicle originally towed and impounded pursuant to police power); *Bey v. Hood*, No. 6:19-CV-00227, 2020 WL 3039147, at *7 (E.D. Tex. Mar. 30, 2020) (no takings claim because property not taken for public use where vehicle was towed because there was no licensed driver).

Accordingly, summary judgment will be granted in favor of Wyoming and against Toyota with respect to the plaintiff's Fifth Amendment takings claim.

### D. Fourteenth Amendment Due Process Claim

To make out a due process violation, a plaintiff must show the deprivation of a cognizable property interest without constitutionally sufficient process. *See Montanez v. Sec'y Pa. Dep't of Corrs.*, 773 F.3d 472, 482 (3d Cir. 2014). Central to the definition of due process is the right to notice and the opportunity to be heard at a meaningful time and

meaningful place. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). "The level of

process due to a party prior to the deprivation of a property interest, such

as a lien, is highly dependent on the context." *In re Mansaray-Ruffin*, 530

F.3d 230, 239 (3d Cir. 2008); *see also Joyce Outdoor Advertising*

*Wallscapes, LLC v. City of Scranton*, No. 3:24-cv-00791, 2024 WL

4900015, at *9 (M.D. Pa. Nov. 26, 2024). Thus, in determining what

process is due, we must balance so-called *Mathews* factors:

> First, the private interest that will be affected by the
> official action; second, the risk of an erroneous
> deprivation of such interest through the procedures
> used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the
> Government's interest, including the function involved
> and the fiscal and administrative burdens that the
> additional or substitute procedural requirement would
> entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

It is undisputed that Toyota had a security interest in the Vehicle.

"[A] security interest is indisputably a property interest protected by the

Fourteenth Amendment." *Ford Motor Credit Co. v. NYC Police Dep't*, 503

F.3d 186, 191 (2d Cir. 2007) (citing *Mennonite Bd. of Missions v. Adams*,

462 U.S. 791, 798 (1983)). Toyota appears to contend that it was deprived

of its property interests in three ways: (1) the towing company's retention

of the Vehicle deprived Toyota of its property interest in the right to take immediate possession of the Vehicle after default; (2) the accrual of storage fees over a period of months, and the towing company's refusal to release the Vehicle without payment of those fees, constituted a deprivation of Toyota's property interest in the Vehicle because it imposed a substantial possessory lien with priority over Toyota's nonpossessory security interest; and (3) Toyota was deprived of a property interest because its security interest in the Vehicle was extinguished altogether when the towing company utilized statutory abandonment procedures to attempt to dispose of the Vehicle by public auction, and ultimately obtained a certificate of salvage from PennDOT.

With respect to the first putative deprivation—impairment of Toyota's claimed right to take immediate possession of the Vehicle after default—as a lienholder, Toyota had *no* present possessory right to the Vehicle protected by due process. *See Santander Consumer USA, Inc. v. Cnty. of Nassau*, 623 F. Supp. 3d 6, 16 (E.D.N.Y. 2022) (lienholder plaintiff could not state a procedural due process claim against a county's vehicle seizure policy because it did not have a present possessory right to the seized vehicles). *See generally* U.C.C. § 9-601 cmt. 4 (noting that a

nonpossessory security interest does not become a *possessory* security interest until the secured party *takes possession* after a default). Moreover, retention of the vehicle by the towing company did not deprive Toyota of its ability to repossess the vehicle, which remained available through the use of legal process.[10] *See* 12 Pa. Cons. Stat. Ann. § 6251(b); 13 Pa. Cons. Stat. Ann. § 9609(b)(2). Indeed, that is ultimately what Toyota attempted to do, filing a replevin action in state court in July 2022, ten months after Bovani's Towing took possession of the Vehicle, and seven months after Toyota learned of the Vehicle's location. *Cf. Rockledge Dev. Co. v. Wright Twp.*, 767 F. Supp. 2d 499, 503 (M.D. Pa. 2011) ("For [a lienholder's] claim to succeed, however, it is not enough that its property interest was in some attenuated manner affected by government action. Instead, the government action must have *deprived* [the lienholder] of its interest without due process of law.")

With respect to the second and third putative deprivations, however, Toyota has clearly established the deprivation of property

---

[10] The gist of Toyota's complaint with this is that the towing company secured the Vehicle behind a locked gate, preventing Toyota from exercising self-help to retake possession of the Vehicle. But that is no different than if Clisham had kept the Vehicle in a residential garage.

interests. The "seizure and retention of the car impaired [Toyota's]
property interests, . . . depriving [Toyota] of the collateral for its lien
while the collateral's value steadily depreciated. [Bovani's Towing's]
towing and storage fees also impaired [Toyota's] interest by effectively
subordinating the priority of [Toyota's] lien." *Am. Honda Fin. Corp. v.
Twp. of Aston*, 546 F. Supp. 3d 371, 379 (E.D. Pa. 2021). And it is beyond
cavil that extinguishment of Toyota's security interest altogether upon
issuance of a certificate of salvage constitutes a deprivation of a protected
property interest. *Cf. Rockledge Dev. Co.*, 767 F. Supp. 2d at 503 ("Case
law supports finding a deprivation when a mortgagee's interest is
destroyed by government action, as happens when the mortgaged
property is sold at a tax sale.").

We find it appropriate at this point, however, to pivot to Wyoming's
*Monell* argument, which makes it unnecessary to reach the question of
what process was due.

### E. Municipal Liability Under § 1983

"On its face, § 1983 makes liable 'every person' who deprives
another of civil rights under color of state law." *Burns v. Reid*, 500 U.S.
478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In

*Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. The Borough of Wyoming is such a municipality subject to liability as a "person" under § 1983. *See Chizmar v. Borough of Trafford*, 454 Fed. App'x 100, 106 (3d Cir. 2011); *Cannarozzo v. Borough of W. Hazleton*, 575 F. Supp. 3d 510, 528 (M.D. Pa. 2021).

But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. The municipal policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981). "A plaintiff must identify the challenged policy, attribute it to the [municipality or corporation] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

Based on the undisputed facts of record, it is clear that, while Wyoming had no official ordinances or written policies regarding towing procedures—including, in particular, procedures for notifying record owners or lienholders of vehicles towed at the direction of police—it did have a regular custom and practice for the removal of unattended vehicles from the Borough's roadways if they pose a danger or safety risk to the public. That custom and practice was, essentially, reliance on the statutory provisions of the state motor vehicle code—including, in particular, 75 Pa. Cons. Stat. Ann. § 3352. It was Wyoming's custom and practice for police to call for a vehicle to be towed from a public roadway

when its driver and other occupants are physically unable to remove the vehicle themselves. *See id.* § 3352(c)(2). It was Wyoming's custom and practice to turn the vehicle over to the private towing company for storage at its place of business or other safe location until the owner of the vehicle could retrieve it, with the expectation that the owner would pay towing and storage fees to the towing company upon retrieval of the vehicle. *See id.* Moreover, under these statutory provisions, a municipal entity was only affirmatively responsible for providing pre-deprivation notice and an opportunity to be heard with respect to abandoned vehicles.[11] *Id.* § 3352(d).

Once the vehicle had been turned over to the towing company, Wyoming's custom and practice did not include any additional role for the municipality in the towing company's retention of the vehicle or the return of the vehicle to its owner, except for processing reports of abandoned vehicles for submission to PennDOT. *See id.* § 7301.1. Notably, these statutes provided that a vehicle could be presumed abandoned once it had remained on the private property of a salvor for

---

[11] At the time when it was towed, the Vehicle at issue had not been declared abandoned.

20 days, *id.* § 102, that a police department was required to pass the report along to PennDOT within five business days, *id.* § 7311.1(a)(3), and that upon receiving a report of an abandoned vehicle, it was *PennDOT* who would provide written notice to the vehicle's registered owner and lienholders of record that the vehicle had been declared abandoned, *id.* § 7305(a). The statutes dictated the content of such a notice as well, requiring PennDOT to inform the owner and lienholders of an abandoned vehicle that they had a right to reclaim the vehicle within 30 days after the date of mailing of the notice, subject to payment of statutorily authorized towing, storage, and reclamation fees,[12] *id.*

---

[12] We note that the storage fees authorized by statute are limited to fees incurred from the date when the abandoned vehicle report was submitted to PennDOT. *See* 75 Pa. Cons. Stat. Ann. § 7306. Any storage lien asserted by a salvor for periods before that date would be common law possessory liens, which generally can be enforced against a lienholder only under very limited circumstances. *See State Farm Mut. Auto. Ins. Co. v. Jim Bowe & Sons, Inc.*, 539 A.2d 391, 394–95 (Pa. Super. Ct. 1988) (holding that towing company was not entitled to garageman's lien for storage before owner of vehicle received notice, and it was not entitled to garageman's lien for storage after owner demanded return of the vehicle and offered to pay a reasonable storage fee); *Assocs. Fin. Servs. Co. v. O'Dell*, 396 A.2d 1324, 1326 (Pa. Super. Ct. 1979) ("The holder of a bailment lease or installment sales contract will not be liable for a lien asserted by a garageman for services which such holder has not assented to."); *Pittsburgh Nat'l Bank v. Schmidt*, 41 Pa. D. & C.3d 143, 145 (Fayette Cnty. (Pa.) Ct. Com. Pl. 1985) ("[E]ven though a possessory
*(continued on next page)*

§ 7305(b)(3), and to inform the owner and lienholders that they had a right to request an administrative hearing to contest the abandoned vehicle declaration and related towing and storage fees, *id.* § 7305(b)(5).

Under this statutory scheme, followed by Wyoming through custom and practice, the Wyoming police are not the "moving force" after the towing company has taken a vehicle away. *See Honda Lease Tr.*, 2024 WL 3219272, at *5. Under the statutory scheme, an unclaimed vehicle reasonably can be expected to be declared abandoned if it remains unclaimed after 20 days, particularly in light of the statutory provision authorizing the accrual of storage fees only from the date when the abandoned vehicle report is submitted to PennDOT. Once that abandoned vehicle report is submitted, the state agency is responsible for promptly providing written notice to the vehicle's registered owner and any lienholders of record.

Under the factual circumstances of this case, Wyoming may have been the moving force initially behind removing the Vehicle from Wyoming Avenue and turning it over to Bovani's Towing. But it played no

_____

lien may arise under circumstances in which the owner's assent may be reasonably implied, the bank's assent is not to be implied merely by virtue of the police officer's direction to remove the vehicle.").

role whatsoever in any of the subsequent actions. Instead, the moving force behind the extended period of storage and the extensive delay in providing notice to the vehicle's lienholder, Toyota, was Bovani's Towing, which waited 157 days—instead of 20—before submitting its abandoned vehicle report to the West Pittston police department.[13] PennDOT then mailed written notice of the abandoned vehicle declaration to Toyota, which included information about reclaiming the Vehicle or requesting a hearing before a municipal officer to challenge the abandonment declaration.

But the failure of a municipality's individual employees or agents to follow an otherwise appropriate municipal policy does not subject the municipality to liability under *Monell* and § 1983. *See Sims v. City of Philadelphia*, 552 Fed. App'x 175, 177 (3d Cir. 2014) ("Under *Monell*, the failure of individual City employees to follow an otherwise-constitutional municipal policy does not subject the municipality to liability under § 1983."); *Talbert v. Kelly*, 799 F.2d 62, 67 (3d Cir. 1986) (noting that in

---

[13] We note that here, too, is a break in the causal chain between Wyoming and subsequent events. Because the towing company's place of business is located in a different municipality, the abandoned vehicle report was submitted to a different municipal police department, which we note processed the report the very same day it received it.

§ 1983 actions against governmental agencies, "the carelessness of an employee in failing to follow a policy . . . may establish the negligence of the employee but does not fasten liability on the governmental agency.");  *Carlos ex rel. Carlos v. York Cty.*, Civil No. 1:15-CV-1994, 2019 WL 6699710, at *27 (M.D. Pa. Dec. 9, 2019) ("[I]solated incidents in which county employees fail to follow a facially appropriate municipal policy generally do not impose liability upon the municipality itself."). The failure of Bovani's Towing to comply with the state statutory scheme, and Wyoming's policy, on processing abandoned vehicles does not support the imposition of liability on Wyoming.

The plaintiff further argues that Wyoming's policy on towing vehicles was deficient because it did not specifically mandate Wyoming officials notify lienholders of any incident in which a vehicle was towed at police direction. In this, the plaintiff relies not on the affirmative implementation or execution of a policy, but on Wyoming's alleged failure to adopt "adequate" policies with respect to the towing and storage of vehicles. But beyond a vague assertion that the existing policy was inadequate because it did not include such a mandate, *see Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (finding vague

assertions of policy deficiencies insufficient to impose liability under *Monell* and § 1983), the plaintiff points to no prior incidents from which we might reasonably infer that Wyoming had actual or constructive knowledge of the purported policy deficiencies upon which the plaintiff's § 1983 *Monell* claim is premised. Despite the opportunity to engage in discovery, the plaintiff has failed to adduce evidence of *any* prior incidents in which a lienholder was similarly deprived of its security interest in a vehicle without timely notice and an opportunity for a hearing. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brown v. City of Pittsburgh*, 86 F.3d 263, 292–93 (3d Cir. 2009) (recognizing that, where no explicit policy is identified, "'more proof than the single incident will be necessary' to establish a causal connection between the incident and some municipal policy"). Regardless, while the policies or practices of Wyoming with respect to the towing of vehicles at police direction might fall short of an ideal policy as envisioned by the plaintiff, policies are not deficient simply

because they are not the best. *See Serafin v. City of Johnstown*, 53 Fed. App'x 211, 215 (3d Cir. 2002) ("The fact that the City's policy was not the most effective policy possible, however, does not, without more, create an unreasonable risk to detainees' safety or demonstrate the City's indifference to such a risk, and there is no 'more' here.").

Accordingly, summary judgment will be granted in favor of Wyoming and against Toyota with respect to the plaintiff's Fourteenth Amendment due process claim.

## V. CONCLUSION

For the foregoing reasons, defendant Wyoming's motion for summary judgment (Doc. 64) will be granted and plaintiff Toyota's motion for summary judgment (Doc. 57) will be denied. The clerk will be directed to enter judgment in favor of the defendant, Wyoming, and against the plaintiff, Toyota. The clerk will be further directed to mark this case as closed.

An appropriate order follows.

Dated: March 31, 2025

JOSEPH F. SAPORITO, JR.
United States District Judge